UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIO J. VALDES, M.D., P.A.,
a Florida corporation,

        Case No. 8:19-cv-02603

    Plaintiff,

v.

CUSTOMERS BANK, INC., a
foreign profit corporation,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant, Customers Bank, Inc. ("Customers Bank"), pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, hereby moves to dismiss the Complaint filed by Julio J. Valdes, M.D., P.A. ("Plaintiff"), and in support thereof states as follows:

### I. Preliminary Statement

Plaintiff, a medical practice, seeks to hold Customers Bank accountable for an embezzlement scheme perpetrated by Plaintiff's own office manager. Plaintiff's employee, April Urling ("Urling"), who Plaintiff describes as "its primary biller and coder who also served in the role of a de facto office manager," allegedly misdirected approximately $384,000 in Medicaid payments. Urling would instruct insurers to transfer payments to her account with Customers Bank instead of Plaintiff's bank account maintained elsewhere. Plaintiff failed to properly supervise its employee and now seeks to shift responsibility for the fraudulent scheme to Customers Bank based upon two legal theories, violation of Article 4A of the Uniform Commercial Code ("UCC")[1] and negligence, both of which fail as a matter of law.

---

[1] Article 4A of the UCC was adopted by the Florida Legislature in Ch. 670, Florida Statutes.

Plaintiff fails to state a cause of action under Article 4A. Article 4A undoubtedly governs the rights and duties associated with electronic funds transfers, including ACH transactions such as those at issue here. However, the conduct alleged by Plaintiff does not violate, and is consistent with, the obligations and requirements imposed on financial institutions by Article 4A. As a beneficiary bank, Customers Bank was not required to verify the funds transfers were authorized; it was merely required to ensure the funds were properly credited to the account number to which the transfer was directed, which is precisely what Plaintiff alleges took place in this case.

Plaintiff also fails to state a cause of action for negligence. As a matter of well-established Florida law, Plaintiff's negligence claim is displaced by Article 4A because it would create rights and duties inconsistent with those expressly enumerated in Article 4A. Even if Plaintiff's negligence claim was not displaced: (i) Customers Bank does not have a general duty to non-customers to investigate suspicious account activity of its account holders; and (ii) crediting Urling's account with an incoming transfer that was initiated and authorized by the senders, as alleged, does not constitute a breach under any circumstance.

Accordingly, both Counts are due to be dismissed for failure to state a cause of action.

## II. Background

Plaintiff is a medical practice in Tampa, Florida that uses a clearinghouse known as Payspan, Inc. ("Payspan") to direct ACH transfers from Medicaid insurers to the practice. [Compl., Dkt. 1-B at ¶¶ 1, 7-9]. Plaintiff employed Urling as its billing and coding professional and de facto office manager for several years. [*Id.* at ¶ 10]. Urling allegedly engaged in fraud and criminal theft by diverting Medicaid insurance payments that were intended for Plaintiff to a bank account she maintained with Customers Bank. [*Id.* at ¶ 13]. Urling would instruct the Medicaid insurers to

make ACH payments to her bank account number at Customers Bank instead of Plaintiff's account at a third party financial institution. [*Id.* at ¶¶ 13, 18].

The Medicaid insurers would then initiate and authorize a payment order with their bank(s) to have funds transferred pursuant to the payment instructions provided by Urling on behalf of Plaintiff. The bank that received the Medicaid insurers' payment instructions would transfer the funds through the ACH system to Customers Bank to credit the appropriate account based on the account number provided to it. As alleged in the Complaint, this pattern of activity was recurring for a number of years and resulted in approximately $384,000 in funds being deposited into Urling's account. [*Id.* at ¶ 18].

### III. Procedural History

Plaintiff filed a Complaint against Customers Bank on June 12, 2019 alleging causes of action for a violation of Article 4A and for negligence. [Dkt. 1-B]. Customers Bank was first served with a copy of the Complaint on October 2, 2019. [Dkt. 1]. Customers Bank timely removed this action to the United States District Court for the Middle District of Florida, Tampa Division on October 21, 2019, by filing a Notice of Removal based upon the Court's diversity jurisdiction. [Dkt. 1].

### IV. Standard of Review

Rule 12(b)(6), Federal Rule of Civil Procedure allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To avoid dismissal under Rule 12, the factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist.*, 992 F.2d 1171,

1174 (11th Cir. 1993). Where amending a complaint would be futile, a court must dismiss the complaint with prejudice. *See Forman v. Davis*, 371 U.S. 178, 182 (1962).

## V. Memorandum of Law

Plaintiff's two causes of action—Violation of Article 4A and Negligence—are both premised on funds transfers that Customers Bank received on behalf of Urling. Both claims fail as a matter of law and should be dismissed with prejudice.

**1.    Customers Bank Did Not Violate Article 4A.**

Plaintiff's claims arise out of allegedly improper funds transfers between Medicaid insurers and Urling. The funds were electronically transferred through ACH transactions into Urling's account at Customers Bank. [*See, generally,* Compl., Dkt 1-B]. The rights, obligations, and duties related to ACH funds transfers are exclusively governed by Article 4A. *See* § 670.105 (defining "automated clearinghouse" as one of the funds transfer systems governed by Article 4A). However, Plaintiff has not alleged a violation of Article 4A. In fact, as alleged, Customers Bank complied with the letter and spirit Article 4A.

*A.    Article 4A provides the legal framework governing an ACH funds transfer.*

By adopting Article 4A, the Florida legislature set forth precise rules for how funds transfers were to be conducted and what liability, if any, the parties to a funds transfer would bear in the event something went wrong. *See List Indus., Inc. v. Wells Fargo Bank, N.A.*, Case No. 17-cv-61204, 2018 WL 4334876, at *5 (S.D. Fla. Sep. 11, 2018) (finding that Article 4A represents the "exclusive means" of determining the rights, duties and liabilities of the affected parties to a funds transfer) (citing *Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003)). Funds transfers are standard banking transactions: A payment order is initiated by a *sender* to a *receiving bank* whereby the *sender* requests funds to be transferred from the sender's account at

the *receiving bank* to a *beneficiary*.[2] The payment order is then scrutinized by the receiving bank, where it is verified pursuant to a security protocol before the receiving bank will accept the payment order.[3] In ACH transactions, once accepted, the payment order is then converted and sent to a clearinghouse, such as Payspan, that processes the payment order and sends the specific payment instructions to the *beneficiary bank* (i.e., the bank that maintains the *beneficiary's* account).[4] The beneficiary bank has only one obligation at that point—to accept the funds transfer and ensure the beneficiary's account is credited with the funds.[5] The beneficiary bank is not required to reconcile the account name and number with the information provided by the receiving bank or the clearinghouse so long as the account number provided by the receiving bank is credited with the funds.[6]

As alleged by Plaintiff in the Complaint, this process was followed in this case: The insurers *(senders)* initiated a payment order from their banks (*receiving banks*), which in turn sent instructions to Payspan (*a clearinghouse*) to direct Customers Bank (*beneficiary bank*) to credit Urling's account (*beneficiary*). [Compl., Dkt 1-B at ¶¶ 11, 13, 17-18]. Customers Bank, as the beneficiary bank, received ACH transfer instructions from the clearinghouse and properly credited the account number to which those instructions were directed—i.e., Urling's account. [*Id.*].[7]

---

[2] *See* § 670.103 and 104 (defining a payment order and the roles a sender and receiving bank play in an Article 4A funds transfer).
[3] *See, generally,* § 670.201 through 205 for the process by which receiving banks are to establish security procedures to verify the authorization of the funds transfer and respond to various errors that may arise during the process.
[4] According to § 670.102(1)(b), Florida Statutes, a beneficiary bank "means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account." *See* § 670.103 (defining a beneficiary bank and the role it plays in the Article 4A funds transfer process).
[5] *See* § 670.404 and 405 (describing the role and obligations of a beneficiary bank in the Article 4A funds transfer process).
[6] *See* § 670.207 (stating that, in the event a payment order contains a named payee and an account number that do not match, a beneficiary bank "need not determine whether the name and number refer to the same person" at all and may rely solely on the account number.)
[7] There is no allegation that the sender's payment order was not authorized. Nor has the Plaintiff alleged that the receiving bank failed to have a sufficient security protocol in place. Even if the Complaint contained such allegations,

### B. *NACHA's allocation of risk is consistent with Article 4A's legal framework.*

NACHA (previously known as the National Automated Clearing House Association) establishes rules that organizations that participate in ACH transactions agree to abide by.[8] *See, e.g.*, *Industrial Park Dev. Corp. v. American Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013). Though not binding on the Court, NACHA's rules reflect how sophisticated commercial entities, working closely with government agencies, seek to comply with Article 4A, among other laws and regulations, through creation of a comprehensive system of rules for electronically moving trillions of dollars through the banking system annually. *See, generally,* Art. I, NACHA Operating Rules. Under NACHA rules, risk and responsibility are allocated to the participating parties, so there is certainty and uniformity in every ACH transaction.

Under NACHA, the bank that receives a payment order and originates the funds transfer, called an "ODFI" by NACHA, is the entity responsible for ensuring that a funds transfer is authorized.[9] *See* NACHA Operating Rules, **Exhibit A**, at § 2.4.1.1 (stating that an ODFI warrants to the other financial institutions involved that the funds transfer is authorized). In this case, the ODFI is the financial institution that initiated the transactions on behalf of its customer, the insurer referenced in ¶ 18 of the Complaint.[10]

Importantly, Customers Bank does not have any obligation under NACHA to verify the authenticity of the funds transfer that are sent to it. An ODFI (or receiving bank in Article 4A terminology) is in the best position to determine the authority of the sender to initiate a payment order. Per the allegations of the Complaint, Customers Bank was merely the financial institution

---

it would be irrelevant in this case, because those rights, duties and obligations govern the transaction between the sender (insurer) and the receiving bank. *See, e.g.,* § 670.201 - .204.

[8] A copy of the pertinent NACHA Operating Rules cited in this Motion are attached hereto as **Exhibit A**.

[9] NACHA uses terminology that is slightly different than Article 4A.

[10] There is no allegation that the transactions at issue were not authorized by the insurers. Instead, Plaintiff has alleged that the payment instruction *from Plaintiff to the insurer* was fraudulent. In other words, the transactions were authorized and the problem, if any, resides between Plaintiff and the insurer.

that accepted payment of the funds transfer on behalf its customer, Urling. Under NACHA, Customers Bank is referred to as the "RDFI". The RDFI is only required to accept payment of the funds sent to it and ensure the funds are credited to the appropriate account based on account number—it does not have any independent obligation to verify the transaction was authorized by the sender. *See* NACHA Operating Rules, **Exhibit A** at § 3.1.1.[11] In fact, RDFIs, such as Customers Bank, are entitled to indemnification from the ODFI related to any funds transaction that is properly and timely recalled due to lack of authority for the transaction. *See* NACHA Operating Rules, **Exhibit A** at § 2.4.5. As such, Customers Bank had no duty under NACHA to verify that the incoming ACH transfers were authorized by the insurer, much less to look behind the insurer's payment order to the propriety of the instruction from Plaintiff to the insurer. Such a duty would bring ACH system to a halt.

C. ***Plaintiff fails to state a claim against Customers Bank under Article 4A.***

Plaintiff has failed to allege a violation of Article 4A; every party to the funds transfer did what they were supposed to do under Article 4A and NACHA. The only unlawful conduct alleged by Plaintiff is that Urling, as Plaintiff's agent and de facto office manager, requested that the sender (Medicaid insurer) initiate a payment order to credit Urling's account instead of Plaintiff's account. The funds transfers at issue were nonetheless *authorized* by the sender(s) and processed accordingly by all other parties—including Customers Bank—along the chain. As such, Plaintiff has not, and cannot, state a cause of action under Article 4A as a matter of law. Plaintiff's claim for alleged Violation of Article 4A should be dismissed with prejudice.

---

[11] "An RDFI ***must accept*** Entries that comply with these Rules and are received with respect to an account maintained with that RDFI[.]" (emphasis added).

#71112306_v2

2.   **Plaintiff's claim for Negligence is displaced by Article 4A.**

Plaintiff also claims that Customers bank was negligent for accepting the funds transfers through the ACH system. Plaintiff's negligence claim should be dismissed with prejudice for two reasons: (A) Plaintiff's negligence claim is displaced by Article 4A; and (B) Plaintiff has failed to state a cause of action for negligence.

   *A. Plaintiff's negligence claim is displaced by Article 4A.*

The Uniform Commercial Code Official Comment following Section 670.102, Florida Statutes, which addresses the substance of Article 4A, provides in pertinent part:

> In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised in this method of payment. ***A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles***. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.
>
> Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. ***The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.***

(emphasis added).

It is well settled that Florida's adoption of UCC Article 4A displaces common law claims such as negligence to the extent they are inconsistent with the rights and obligations found in Article 4A. *See., e.g., List Indus.*, 2018 WL 4334876, at *5 (finding that Article 4A represents the

"exclusive means" of determining the rights, duties and liabilities of the affected parties to a funds transfer) (citing *Regions Bank v. Provident Bank Inc.*, 345 F.3d at 1274); *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967, 971 (Fla. 3d DCA 1998) (finding that plaintiff's negligence count was preempted by Article 4A and due to be dismissed). When analyzing whether common law claims are displaced by Article 4A, the critical inquiry is whether the common law claim alleges an "underlying injury" that Article 4A is designed to protect against. *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89-90 (2d Cir. 2010) ("For Article 4A purposes, the critical inquiry is whether its provisions protect against the type of underlying injury or misconduct alleged in a claim.").

In implementing Article 4A, the Florida legislature intended it to be the sole remedy available to a prospective plaintiff with respect to funds transfers—thereby displacing any common law claim that could arise related to funds transfers specifically. *See Capten Trading Ltd. v. Banco Santander Int'l*, Case No. 17-20264-Civ, 2018 WL 1558272, at *4 (S.D. Fla. Mar. 29, 2018) (finding common law claims premised on the defendant mishandling unauthorized wire transfer requests were displaced by Article 4A, which provided the sole remedy for such conduct). In fact, courts in Florida and across the country have routinely dismissed similar common law claims premised upon allegedly unauthorized funds transfers governed by Article 4A. *See id.*; *see also List*, 2018 WL 4334876, at *4-5 ("[p]laintiff's claim rests solely on allegations related to the unauthorized transactions, thus Article 4A preempts [p]laintiff's common law negligence claim."); *Shapiro v. Wells Fargo Bank, N.A.*, Case No. 18-cv-60250, 2018 WL 8334591 (S.D. Fla. Apr. 4, 2018) (dismissing a negligence claim premised on unauthorized funds transfers because the negligence claim was displaced by Article 4A); *Ma*, 597 F.3d at 89-90 (finding the common law claims at issue were "at their core, assertions that [plaintiff] did not order or approve any of the

disputed electronic transfers of funds" and "[a]s a result, resort to Article 4A… is unavoidable"); *Zengen, Inc. v. Comerica Bank*, 158 P.3d 800, 801 (Cal. 2007) (in alleged embezzlement and unauthorized funds transfer case, concluding common law claims related to the funds transfers "are displaced by Article 4A and that the plaintiff's exclusive remedy for that claim must be found in Article 4A.") (internal citation and quotation omitted); *Fitts v. AmSouth Bank*, 917 So. 2d 818, 824 (Ala. 2005) (concluding common law claims premised on the bank making improper funds transfers are displaced by Article 4A and the plaintiff's exclusive remedy for such a claim is under Article 4A); *2006 Frank Calandra Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 236 (S.D.N.Y. 2011) aff'd, 503 F. App'x 51 (2d Cir. 2012) ("Any common law claims about the existence of unauthorized wire transfers… and the mechanics of how those transactions were conducted, fall within the regime of Article 4-A"); *Travelers Cas. & Sur. Co. of America v. Bank of America, N.A.*, Case No. 09-C-06473, 2010 WL 1325494, at *3 (N.D. Ill. Mar. 30, 2010) ("Article 4A addresses the issues implicated by [p]laintiff's breach of implied contract claim… [including] whether particular payment orders accepted by [the bank] are enforceable").

In the present case, Plaintiff's negligence claim is premised on funds transfers for which Article 4A controls, therefore displacing Plaintiff's negligence claim. For example, Plaintiff alleges that Customers Bank is liable to Plaintiff for "failing to properly monitor the [Urling] account thus permitting ***electronic payments*** that were intended for [Plaintiff] to be diverted to the [Urling] account[.]" Compl., Dkt. 1-B at ¶ 28 (emphasis added); *see also* Compl., Dkt. 1-B at ¶¶ 13 (detailing Urling's criminal enterprise of initiating funds transfers from third parties to the personal Customers Bank account Urling maintained); 18 (listing all of the funds transfers at issue in this case, dating back to June 2015); 19 (discussing the "electronic payments" that were allegedly designed to be paid to Plaintiff); 30 (identifying the damages allegedly incurred by

10

#71112306_v2

Plaintiff as the sum of the funds transfers at issue in this case). As such, the "underlying injury" complained of by Plaintiff is directly tied to the funds transfers to Urling's account with Customers Bank, which are governed by Article 4A and therefore displaced. *See, e.g., Ma*, 597 F.3d at 89-90.

Moreover, causes of action sounding in negligence create inconsistent duties, rights, and obligations for funds transfers that are not found in Article 4A. For example, Article 4A requires a plaintiff to provide notice of any disputed transaction within one year of learning of the alleged unauthorized funds transfer, whereas a claim for negligence has no such notice requirement. § 670.505, Florida Statutes. This allows Article 4A defendants a shield from liability in cases where a plaintiff was put on constructive notice of the transfers through periodic account statements, a limitation on liability that is not otherwise present under negligence's standard four-year statute of limitations. *Compare id. with* § 95.11(3)(a), Florida Statutes.

Causes of action for negligence also expand the duties owed by parties to a funds transfer that are not contemplated by Article 4A. For example, only a receiving bank is liable to refund its customer for an unauthorized funds transfer under Article 4A, *see* Fla. Stat. § 670.204, where a more general duty like the one Plaintiff is seeking to impose on other parties to the funds transfer may exist under a negligence cause of action. *See also*, *e.g.*, Fla. Stat. § 670.404 (obligation of beneficiary bank to pay the amount of the order, and give notice, to the beneficiary). As such, Plaintiff's negligence claim, as presented and alleged in the Complaint, is inconsistent with the rights and duties set forth in Article 4A and displaced by the statute.

### B. Plaintiff's negligence claim fails to state a cause of action.

As stated above, Plaintiff cannot proceed under a theory of negligence for the conduct alleged in the Complaint. However, in addition to being displaced by Article 4A, Plaintiff's

11

negligence claim fails to state a cause of action because (i) Customers Bank does not owe Plaintiff a legal duty under the facts alleged; and (ii) Customers Bank did not breach any purported duty.

### i. Customers Bank did not owe Plaintiff a duty.

The first element of a negligence claim under Florida law is whether there is a legal duty owed by a defendant to the plaintiff. *Lamm v. State St. Bank & Trust Co.*, 749 F.3d 938, 947 (11th Cir. 2014) (citing *Estate of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 789 (Fla. 2d DCA 2010)). "Whether a duty is owed is a question of law to be determined by the court." *Tank Tech, Inc. v. Valley Testing, L.L.C.*, 244 So. 3d 383, 392-93 (Fla. 2d DCA 2018) (citing *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 27-28 (Fla. 2011)). Where the court determines a duty does not exist, "then no action for negligence may lie." *Id.* at 393 (citing *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003)).

As a general rule, banks do not owe non-customers a duty to protect them from the intentional torts of the bank's customers. *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1247-48 (M.D. Fla. 2013); *accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286-87 (2d Cir. 2006) (cited with approval by *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1343 (S.D. Fla. 2014)); *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002). It is also "well-established that there is no general duty to investigate or 'actively' monitor suspicious banking activity." *List Indus.*, 2018 WL 4334876, at *5 (citing *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968); *Gevaerts*, 56 F. Supp. 3d at 1341-42).

Plaintiff is a not a customer of Customers Bank. Compl., Dkt. 1-B at ¶¶ 14, 17 (admitting that Plaintiff's only account is with a third party bank and not with Customers Bank). As such, Customers Bank does not owe Plaintiff a duty to protect it from the alleged criminal conduct of

Plaintiff's own employee—Urling. *Wiand*, 938 F. Supp. 2d at 1247-48. In addition to being in line with applicable law, this also makes sense practically. Plaintiff, **not** Customers Bank, is in the best position to monitor Urling, as she was Plaintiff's employee. Plaintiff is also in the best position to know whether payments are being misdirected to other accounts or not received by the Plaintiff's business.

Moreover, Plaintiff is asking this Court to impose a duty on Customers Bank to second-guess the authorization underlying every incoming transfer. Compl., Dkt. 1-B at ¶¶ 25-26. However, if the Court were to do so, it would create an unreasonable burden and effectively require Customers Bank to be responsible for the banking world at large—an outcome courts have found to be contrary to the intent of the drafters of the UCC and Article 4A. *Lerner*, 459 F.3d 286-87 (citing other courts for the proposition that applying a duty to banks similar to the one articulated by Plaintiff in this case would "unreasonably expand banks' orbit of duty" and effectively make "banks liable to the world's banking public.") (internal quotation and citation omitted).

As such, Customers Bank did not owe a duty to Plaintiff, a non-customer, to monitor and scrutinize the ACH transactions directed to Urling's account with Customers Bank. An imposition of such a duty in this case would be contrary to well-reasoned precedent and inappropriately create a duty for all banks to the world at large.

### ii. *Customers Bank did not breach any purported duty.*

Additionally, the Complaint wholly fails to allege any breach by Customers Bank. Plaintiff simply alleges that Customers Bank allowed the ACH transfers at issue to be placed into Urling's account. [Compl., Dkt. 1-B at ¶ 28]. As a beneficiary bank under Article 4A, Customers Bank's only obligation imposed by law is to accept payment of the ACH transfers and credit the funds to the appropriate beneficiary based on the account number provided. *See, generally,* § 670.404 and

405, Florida Statutes. As a matter of law, the alleged conduct of Customer's Bank in this case is insufficient to support a cause of action for negligence. See *Wiand*, 86 F. Supp. 3d at 1330 (finding that where bank operated in good faith and had no control over the deposits and transfers except as to place the funds as instructed, no common law liability for negligence attached); *see also List Indus.*, 2018 WL 4334876, at *5 ("Plaintiff has not alleged any facts that would allow this Court to infer that Defendant operated in anything but good faith… Therefore, the Plaintiff's claim for common law negligence must be dismissed.").

## V. Conclusion

Plaintiff's Complaint is premised on alleged unlawful conduct of Plaintiff's de facto office manager who fraudulently initiated otherwise appropriate ACH transactions.  Customers Bank's conduct complied with Article 4A as a matter of law. Plaintiff's negligence claim is displaced by Article 4A and otherwise fails to allege a duty owed by Customers Bank to Plaintiff, or a breach. Amendment of these claims against Customers Bank would be futile.

WHEREFORE, Customers Bank respectfully requests the Court dismiss the Complaint with prejudice, and for such further relief as the Court deems just and proper.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ *Joshua H. Roberts*
Joshua H. Roberts (FBN 42029)
Derek K. Mountford (FBN 127172)
50 N. Laura Street, Suite 3900
Jacksonville, FL  32202
Telephone: (904) 353-2000
Facsimile:  (904) 358-1872
joshua.roberts@hklaw.com
cathy.luke@hklaw.com
derek.mountford@hklaw.com
wanda.adair@hklaw.com
***Counsel for Defendant***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12th, 2019, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either *via* transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to electronically receive Notices of Electronic Filing.

Sean P. Cronin, Esq.
Michael J. Stanton, Esq.
STANTON CRONIN LAW GROUP, P.L.
6944 West Linebaugh Ave., Suite 102
Tampa, FL  33625
scronin@sclawyergroup.com
mstanton@sclawyergroup.com
**Counsel for Plaintiff**

                    /s/ *Joshua H. Roberts*
                    Attorney

#71112306_v2